UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| UNITED STATES of AMERICA, | * | |
| --- | --- | --- |
| | * | |
| v. | * | Criminal Action No. 11-10218-JLT |
| | * | |
| SAMUEL DIXON, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM

May 21, 2012

TAURO, J.

I. Introduction

Defendant Samuel Dixon was indicted on one count of possession with intent to distribute cocaine under 21 U.S.C. § 841(a), and one count of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). Currently before the court is Defendant's Motion to Suppress and Motion for Franks Hearing [#15].

II. Background

A. Factual Background

On February 11, 2011, Boston Police Detective Michael M. Ross applied to the Dorchester District Court for two warrants. Both warrants were issued that same day, one authorizing the search of the person of Samuel Dixon, and one authorizing the search of 12 York Street, in Dorchester, Massachusetts. The warrants "authorized a search for crack cocaine, paraphernalia used in the distribution of crack cocaine, money derived from the sale of crack cocaine, computers, books, notes, papers and ledgers denoting the sale of crack cocaine, and all

personal papers, receipts and/or keys showing occupancy of 12 York St. Apt. #1 in Dorchester."[1] Both warrants were executed on February 16, 2011, leading to the seizure of controlled substances, a firearm and drug paraphernalia from the apartment, and Defendant's arrest.[2]

Detective Michael M. Ross swore out an affidavit in support of each warrant. In those affidavits, Detective Ross detailed his background and training in law enforcement. The affidavits reflect that he has been a Boston Police Detective since 2007, and that he has completed a number of relevant training classes between 1999 and 2007. Detective Ross has also participated in "over a thousand drug investigations," as part of his work with the Boston Police Department.[3]

The affidavit reflects that Detective Ross received information from a confidential informant ("CI") that a black male was selling crack cocaine in the Dorchester/Roxbury section of Boston. Detective Ross testifies that this CI has provided Detective Ross's unit "with reliable information in the past that has led to the arrests and convictions of individual(s) for violation of the drug laws and also the seizure of drug(s), money, firearm(s) and ammunition."[4] The CI identified the suspect as a black male with short hair, approximately six feet tall and weighing two hundred pounds. The CI also stated that the suspect drove a red Ford SUV, and provided a phone number that the CI used to contact the suspect to purchase drugs.

The affidavit states that the CI participated in three controlled buys of crack cocaine from the suspect, and that after each purchase, officers with the Boston Police Department followed

---

[1] Def. Mot. to Sup. [#16] at 2; see also Ex. A [#16-1]; Ex. B [#16-2].

[2] Def. Mot. to Sup. [#16] at 4; see also Compl. [#1].

[3] Def. Mot. to Sup., Ex. C Ross Aff. [#16-3].

[4] Id.

2

the suspect back to the 12 York Street address. After each buy, the CI turned over to officers the substance s/he had purchased, which Detective Ross testified that he believed to be crack cocaine.

The affidavit also contains supplemental information tying the suspect to the 12 York Street address. Detective Ross testified that he observed a red Ford Expedition frequently parked in the driveway of 12 York Street, and that he was able to confirm that the car was registered to Samuel O. Dixon, with an address of 12 York Street, apartment #1 in Dorchester. When Detective Ross called the phone number given to him by the CI, he reached a voice mail message that stated he had reached Mr. Dixon, and the CI was able to identify Mr. Dixon from a sanitized photograph. Finally, the affidavit states that Detective Ross contacted the utility company and was able to confirm that the utilities for 12 York Street were in the name of Samuel Dixon, and that the contact number for Mr. Dixon was the same one that was given to police by the CI.

It is based on the information in this affidavit that probable cause was found for the issuance of the two warrants. As previously stated, the warrants were issued on February 11, 2011, and executed on February 16, 2011.

B.    Procedural Background

On May 9, 2011, the government filed a criminal complaint against Defendant, and an arrest warrant was issued. On May 16, 2011, Defendant was arrested, and on May 17, 2011, counsel was appointed. On June 16, 2011, a grand jury indicted Defendant on one count of being a felon in possession of a firearm, and one count of possession with intent to distribute cocaine. On June 28, 2011, Defendant was arraigned before Magistrate Judge Sorokin. On September 12, 2011, Judge Sorokin held a final status conference, and issued a Report and Order. On January 1,

2012, Defendant filed the Motion to Suppress and Motion for Franks Hearing [#15] in this court. After a hearing on April 18, 2012, the court took the matter under advisement.

III. Discussion

Defendant asserts that the search warrants issued in this case were not supported by probable cause, and that no reasonable officer could have relied on the warrants in good faith. Defendant urges that he is therefore entitled to a hearing and further discovery under Franks v. Delaware,[5] and that the fruits of the allegedly unlawful search should be suppressed. For the reasons set forth below, this court declines to grant Defendant's request.

A. Probable Cause

The law is clear that, "[a] warrant application must demonstrate probable cause to believe that (1) a crime has been committed – the 'commission' element, and (2) enumerated evidence of the offense will be found at the place to be searched – the so-called 'nexus' element."[6] A warrant application, when presented to the magistrate, must contain facts that would "'warrant a man or reasonable caution' to believe that evidence of a crime will be found."[7] The probable cause standard "does not demand a showing that such a belief be correct or more likely true than false," but rather is directed at the question of whether "the magistrate had a 'substantial basis' for concluding that probable cause existed."[8]

Reviewing courts should be mindful of the fact that, "magistrates making probable cause

---

[5] 438 U.S. 154 (1978).

[6] United States v. Feliz, 182 F.3d 82, 86 (1st Cir. 1999) (citing United States v. Zayas-Diaz, 95 F.3d 105, 111 (1st Cir. 1996)).

[7] Feliz, 182 F.3d at 86 (quoting Texas v. Brown, 462 U.S. 730, 742 (1983)).

[8] Feliz, 182 F.3d at 86.

4

determinations act within short time constraints and consequently must read affidavits 'in a practical, common sense fashion.'"[9] While it is true that an affidavit must establish probable cause with sufficient detail and precision to enable meaningful judicial review,[10] courts assess probable cause based on the totality of the circumstances, and generally within the four corners of the affidavit in support of the warrant.[11]

When a confidential informant's information forms the basis for a magistrate's finding of probable cause, "the affidavit must provide some information from which the magistrate can assess the informant's credibility."[12] A magistrate may use a number of factors to assess an informant's credibility including:

> whether an affidavit supports [the] probable veracity or basis of knowledge of persons supplying hearsay information; whether the informant's statements are self authenticating; whether some or all of the informant's factual statements were corroborated wherever reasonable and practicable . . .; and whether a law enforcement affiant included a professional assessment of the facts related by the informant based in experience.[13]

In assessing credibility of a confidential informant, courts first turn to the manner in which the tip was provided to law enforcement agents. An in-person meeting between the informant and the law enforcement agent generally supports the informant's reliability.[14] "A specific, first-hand

---

[9] United States v. Greenburg, 410 F.3d 63, 67 (1st Cir. 2005).

[10] See Michigan v. Summers, 452 U.S. 692, 699-700 & n.11 (1981).

[11] See, e.g., United States v. Grant, 218 F.3d 72, 75 (1st Cir. 2000); see also Zayas-Diaz, 95 F.3d at 111.

[12] Greenburg, 410 F.3d at 67.

[13] Id. (quoting Zayas-Diaz, 95 F.3d at 111).

[14] Greenburg, 410 F.3d at 67.

account of possible criminal activity is a hallmark of a credible tip."[15]  Furthermore, if an agent is able to corroborate even innocent activity related by the informant, such corroboration supports a finding of probable cause.[16]  When "an informant is right about some things, he is more probably right about others."[17]  Information given by a confidential informant, however, does not need to be proven to a certainty in order to form the basis of a probable cause determination.[18]

In the present case, Detective Ross's affidavit sets forth sufficient facts on its face to support a finding of probable cause.  The warrant avers that the confidential informant is known to Detective Ross, and "has provided the B2/Drug Control Unit with reliable information in the past that has led to the arrests and convictions of individual(s) for violation of the drug laws and also the seizure of drug(s), money, firearm(s) and ammunition."[19]  The warrant thus demonstrates that Ross knew the informant's identity, and thus could hold him responsible for the provision of false or misleading information.[20]  Furthermore, past successful tips, such as those referred to

---

[15]Id.

[16]Id. at 69 (quoting United States v. Perez, 67 F.3d 1371, 1383 (9th Cir. 1995)).

[17]Greenburg 410 F.3d at 69 (citing Illinois v. Gates, 462 U.S. 213, 243 n.13 (1983)).

[18]See United States v. Khounsavahn, 113 F.3d 279, 284 (1st Cir. 1997).

[19]Ross Aff. [#14-3] at 2.

[20]Greenburg, 410 F.3d at 67 (finding probable cause where the officer swearing out the warrant "knew the informant's identity and therefore could hold the informant responsible if he provided false information," and noting that "[t]his tends to establish an incentive for the informant to tell the truth.").  See also United States v. Barnard, 299 F.3d 90, 93 (1st Cir. 2002) (police can hold a known confidential informant responsible if his/her information proves to be inaccurate or false).

here, serve to reinforce an informant's reliability.[21] A lack of particularized information about the informant's past tips is not fatal to probable cause, and may be necessary to protect the informant's identity.[22]

The informant's statements also support a finding of probable cause because they are internally consistent, and where possible, were confirmed by Detective Ross. The informant gave Detective Ross first-hand information, indicating the Defendant's appearance, the type of car Defendant drove, and the phone number at which Defendant could be contacted to arrange a drug transaction.[23] The informant also implicated him/herself in criminal activity by stating that s/he had bought crack cocaine from Defendant in the past. Such a self-incriminating statement made by an informant who is known to law enforcement is "more likely to be true because of the risk inherent in making such a statement."[24]

Detective Ross was able to independently confirm Defendant's identity, address, phone number, and vehicle registration.[25] This verification serves to corroborate the CI's initial tip as, if "an informant is shown to be right about some things, he is probable right about other[s]. . ."[26]

---

[21] See e.g., Greenburg, 410 F.3d at 67; United States v. Taylor, 162 F.3d 12, 18 (1st Cir. 1998); United States v. Jordan, 999 F.2d 11, 14 (1st Cir. 1993).

[22] See United States v. Tiem Trinh, 665 F.3d 1, 7 (1st Cir. 2011) (warrant affidavit's statement that informant "has on numerous occasions provided credible and reliable information which led to the successful seizure of MDMA, marijuana and weapons in the past," was sufficient to establish informant reliability in probable cause determination).

[23] Ross Aff. [#15-3] at 2.

[24] Greenburg, 410 F.3d at 67-68.

[25] See Ross Aff. [#15-3].

[26] Alabama v. White, 496 U.S. 325, 331 (1990); see also Tiem Trinh, 655 F.3d at 8.

Detective Ross went on to arrange and observe three separate controlled buys of crack cocaine from Defendant. The First Circuit has repeatedly found that a single controlled buy may be sufficient to support probable cause.[27] Where, as here, three controlled buys are combined with reliable and corroborated information provided by a confidential informant who is personally known to the officer applying for the warrant, a magistrate would be justified in finding that probable cause existed.

Defendant asserts that the Ross affidavit is substantively and procedurally flawed because it lacks sufficient information to enable meaningful judicial review.[28] In support of this position, Defendant points out that the affidavit does not give the precise dates and locations of the three controlled buys, and does not indicate that field testing was ever done to confirm Detective Ross's preliminary assessment that the objects purchased from Defendant by the CI were in fact controlled substances.[29] Although more information could theoretically have been provided, Detective Ross indicated in the affidavit that the dates and locations of the controlled buys were withheld in order to protect the identity of the confidential informant.[30] This practice is common among law enforcement, and does not usually operate to defeat a finding of probable cause.[31]

---

[27] See e.g. United States v. Materas, 483 F.3d 27, 32 (1st Cir. 2007); United States v. Davis, 96 F.3d 1430, 1436 n.6 (1st Cir. 1996) (Table Opinion).

[28] Def.'s Mem. in Supp. [#16] at 8.

[29] Id. at 8-9.

[30] Ross Aff. [#15-3] at 3-5.

[31] See, e.g., United States v. Hicks, 575 F.3d 130, 138 (1st Cir. 2009) ("the use of the phrase 'on or about' when describing the time frame of a controlled drug purchase is a common police practice, used to protect the identity of a confidential informant.") (citing United States v. Carty, 993 F.2d 1005, 1007 (1st Cir. 1992)). See also United States v. Davis, 96 F.3d 1430, *6 (1st Cir. 1996) (Table Opinion) ("While further detail about the controlled buy might have been

Although exact times for each controlled buy were not given, approximate dates for each buy were related, which would enable a magistrate to assess the freshness of the evidence.

Detective Ross relied on his experience in law enforcement to determine that the substances that the CI purchased from Defendant were crack cocaine. In determining whether an affidavit is sufficient to support a finding of probable cause, courts may properly weigh a law enforcement affiant's relevant experience and expertise.[32] Here, Detective Ross's years with the Boston Police Department lend credibility to his assessment that Defendant was engaged in drug dealing, even in light of the fact that there was no field testing done at the time.

Although the controlled buys did not take place at the 12 York Street location, the affidavit, nonetheless, supports a finding of probable cause to search that location. As the First Circuit has emphasized, "[t]he nexus between the objects to be seized and the premises searched need not, and often will not, rest on direct observation, but rather 'can be inferred from the type of crime, the nature of the items sought, the extent of an opportunity for concealment and normal inferences as to where a criminal would hide [evidence of a crime] . . . .'"[33] The Fourth Amendment merely requires that an affidavit contain "information showing a 'fair probability' that evidence of a crime would be found [in the location to be searched]."[34] In this case, the Affidavit states that law enforcement officers observed Defendant traveling from his apartment to the

---

desirable, the lack of specificity about the date of the buy or the quantity involved is not necessarily probative of falsity. The concern for keeping the buyer's identity confidential is a more likely explanation for the lack of those details.").

[32]See Tiem Trinh, 655 F.3d at 10.

[33]Feliz, 182 F.3d at 88 (quoting United States v. Charest, 602 F.2d 1015, 1017 (1st Cir. 1979)).

[34]Grant, 218 F.3d at 75 (quoting Gates, 462 U.S. at 238).

location of the controlled buy and back to the apartment after the controlled buy had been completed.[35] On these facts, and given the nature of the criminal activity, it would be reasonable for a magistrate to infer that Defendant was using the apartment as a base in his drug selling operation and that contraband or evidence of crime would be found there. The affidavit in this case presents sufficient facts, on its face, to support a finding of probable cause to search both Defendant's person and Defendant's home.

    B.    <u>Motion for a Franks Hearing</u>

An affidavit in support of a search warrant is presumed to be valid.[36] A defendant is entitled to a <u>Franks</u> hearing, however, where he makes a "substantial preliminary showing" that the warrant affiant knowingly and intentionally, or with reckless disregard for the truth made a material false statement in the warrant affidavit that was necessary to the determination of probable cause.[37] A material omission from the warrant affidavit made with the requisite intent may also trigger a <u>Franks</u> hearing.[38] A challenger's attack on a warrant affidavit must contain "allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons."[39]

---

[35] <u>See</u> Ross Aff. [#15-3] at 3-5.

[36] <u>Grant</u>, 218 F.3d at 77 (citing <u>Franks</u>, 438 U.S. at 171).

[37] <u>Franks</u>, 438 U.S. at 155-56.

[38] <u>United States v. Castillo</u>, 287 F.3d 21, 25 (2002).

[39] <u>Franks</u>, at 171-72.

10

Defendant suggests that he is entitled to a Franks hearing on two grounds. First, he asserts that the warrant affidavit in this case is strikingly similar to "vague affidavits apparently routinely employed by [Detective] Ross," and that these similarities raise "the specter of fabrication." Second, he asserts that Detective Ross's statement that Boston Police officers are capable of accurately identifying substances as illegal is "demonstrably false."[40]

Defendant's submission of a number of similar warrant affidavits put together by Detective Ross falls short of the "substantial preliminary showing" that Franks requires. The Supreme Judicial Court has eloquently stated that the requirement for a "'substantial preliminary showing' of intentional or reckless police misrepresentations accommodates [the competing concerns raised by the Fourth Amendment] by ensuring that spurious claims will 'wash out at an early stage.'"[41]

Defendant's first ground for relief asks the court to pile inference upon speculation. Defendant has attached to his motion a number of other warrant affidavits sworn by Detective Ross. Defendant points to similarity in structure and content of Detective Ross's affidavits, including the number of controlled buys, imprecise dates for controlled buys, and the use of confidential informants who either initiate the encounter or corroborate anonymous tips.[42] Asking the court to infer the existence of intentional or reckless falsehoods from these similarities flies in the face of Franks's requirement that a defendant challenging an affidavit, "point out specifically the portion of the warrant affidavit that is claimed to be false."[43] Similarities in warrant affidavits

---

[40]Def. Mem. in Sup. [#16] at 11.

[41]Commonwealth v. Ramirez, 416 Mass. 41, 49 (1993) (quoting Franks, 438 U.S. at 170).

[42]Def. Mem. in Sup. [#16] at 4-5.

[43]Franks, 438 U.S. at 172.

11

by the same detective are likely to reflect a detective's style and training, and do not suggest, much less require an inference of fabrication.[44]

In Commonwealth v. Ramirez, which Defendant heavily relies on in his brief, the Supreme Judicial Court found that a defendant made the necessary evidentiary showing by raising "discomforting similarities among the applications relying on [the same] informant and an apparent conflict between [the warrant applications] and the [officer's] testimony."[45] The Ramirez analysis is inapplicable to the case presently before the court. In Ramirez, defense counsel uncovered seventy-one successful warrant applications filed by the same officer, and based on information provided by the same confidential informant over the course of approximately two years.[46] The warrants in that case contained, "uniform representations that [the informant] had observed drug activities in the premises to be searched within a few days before the search occurred, [and had resulted in] a suspiciously low number of contraband seizures."[47] The officer who swore out the warrant affidavits in the Ramirez case also worked closely with a number of officers who had recently admitted to fabricating informants in order to obtain search warrants.[48] There is neither an admission or evidence of fabrication in this case.

---

[44] See e.g., United States v. Brown, 3 F.3d 673, 678 n.6 (3d Cir. 1993) (similarity in affidavits reflects detective's training and writing style, rather than truthfulness); United States v. Savides, 658 F. Supp. 1399, 1403 (N.D. Ill. 1987) (similarity between affidavits indicative of personal investigative approach and insufficient to warrant Franks hearing), aff'd United States v. Pace, 898 F.2d 1218, 1227-28 (7th Cir. 1990).

[45] Ramirez 416 Mass. at 51.

[46] Id. at 45-46.

[47] Id. at 46.

[48] Id. at 47.

In his motion, Defendant seems to wish to attribute the misconduct of Boston Police Department officers twenty years ago to Detective Ross. Unlike the warrants in the Ramirez case, which involved an assertion that the informant had been inside a certain location and observed illegal activity, the warrant affidavit here goes into much more detail about both the identity of the Defendant and the nature of the illegal activity. The warrant affidavit in this case includes confirmed details about the Defendant's appearance, address, phone number, and automobile. The confidential informant implicated himself in illegal activity by indicating that he had personally bought drugs from Defendant, and Detective Ross went on to arrange three controlled purchases of crack cocaine from Defendant. Officers were able to observe Defendant leaving the address to be searched before each buy, and returning to it after. Given the wealth of detail, and Detective Ross's relevant training in report writing, it is far more likely that similarities between warrant affidavits are attributable to good professional practice and standard investigative techniques, than that Detective Ross has invented a confidential informant.

Additionally, in the Ramirez case, the officer used the same confidential informant in support of all of the questionable warrants. The improbability that the same individual could be involved in such a high number of investigations, with such a small amount of contraband seized, contributed to the court's inference of fabrication. Here, there is no suggestion that Detective Ross relied on the same informant in most, much less all of the affidavits submitted to the court for consideration.[49]

In calling attention to the similarities between the warrant affidavits sworn by Detective Ross, Defendant disregards their differences. Examination of the warrant affidavits submitted by

---

[49]See Def.'s Mem. in Supp. [#16].

Defendant as Exhibit D[50] reveals differences in Detective Ross's method for identifying the address of a target; description of the location of controlled buys; confirmation of a target's identity through use of a sanitized photo; use of utility providers to determine whether a target lives at a given address; checks of prior criminal history of a target; identification of a target through use of automobile registration data; and surveillance of the location for which a warrant is sought. In short, the elements of the warrant affidavits that are similar, are those that one would expect to be consistent across investigations. Similarities in the structure of controlled buys, methods for obtaining leads, and omissions of information that could be used to identify the informant are indicative of Detective Ross's personal investigative approach, rather than falsity.[51]

Defendant's next argues that a Franks hearing is required because of the "demonstrably false asseveration that Boston Police officers are capable of accurately identifying substances [as] illegal."[52] This is contrary to Detective Ross's actual statement in the warrant affidavit, which was that "his training and experience led [him] to believe" that the substance purchased by the confidential informant was crack cocaine.[53] Detective Ross did not state anything about the general abilities of Boston Police officers to identify controlled substances, and he did not definitively state that the substance was crack cocaine. Defendant has offered no proof that Detective Ross either deliberately lied about his belief that the substance was crack cocaine, or

---

[50]Def. Mot. to Sup. Ex. D [#15-4, 15-5, 15-6].

[51]See Savides, 658 F. Supp. at 1403..

[52]Def. Mem. in Sup. [#16] at 12.

[53]Ross Aff. [#15-3] at 3.

14

that he recklessly included that information in his affidavit with reckless disregard for the truth.[51] Detective Ross's identification of the substance as crack cocaine, based on his training and experience, was one of many factors that the magistrate could have considered in making a probable cause determination.[52] Because Defendant has offered no evidence that Detective Ross's statement was either deliberately false or made with reckless disregard for the truth, a Franks hearing is not warranted on this ground.

Finally, because this court finds that the warrant was supported by probable cause, and that Defendant is not entitled to a Franks hearing, application of the good faith exception established by the Supreme Court in United States v. Leon is unnecessary.[53]

IV.  Conclusion

For the foregoing reasons, Defendant's Motion to Suppress Evidence and Motion for a Franks Hearing [#15] is DENIED. The warrant affidavit supports the magistrate's finding of probable cause, and Defendant has not made the substantial preliminary showing necessary to

---

[51] Defendant does rely on an affidavit prepared by a public defender for use in another case, which identifies approximately two hundred cases where law enforcement officers have misidentified controlled substances. Def.'s Ex. E. [#15-7]. This affidavit contains no details related to the percentage of cases where controlled substances are incorrectly identified as compared to all identifications, and more importantly no information related to Detective Ross. It is therefore, not probative of Detective Ross's truthfulness or untruthfulness as to what he believed the substance recovered by the confidential informant in this case to be.

[52] See, e.g. United States v. Castillo, 287 F.3d 21, 26-27 (1st Cir. 2002) (upholding magistrate's finding of probable cause based in part on law enforcement officer's professional opinion that a substance was contraband – even when later field testing found that opinion to be incorrect – in light of the totality of the circumstances in the warrant affidavit that indicated the existence of a drug dealing operation at the place to be searched.).

[53] United States v. Leon, 468 U.S. 897 (1984).

15

establish the need for a Franks hearing.


AN ORDER HAS BEEN ISSUED.


/s/ Joseph L. Tauro

United States District Judge